

Fourth Court of Appeals

San Antonio, Texas

**OPINION**

No. 04-20-00330-CV

**IN RE J.O.H.**, R.F.B., H.R., J.J.R., and M.L.D.

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-00260
Honorable Peter A. Sakai, Judge Presiding[1]

Opinion by:    Liza A. Rodriguez, Justice
Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: December 18, 2020

AFFIRMED

Appellant Mother[2] appeals from the trial court's order terminating her parental rights to

her five children: fifteen-year-old J.O.H., nine-year-old R.F.B., eight-year-old H.R., six-year-old

J.J.R., and four-year-old M.L.D.[3] After a bench trial, the trial court found Appellant Mother (1)

failed to comply with court-ordered provisions of her family service plan (subsection "O"

grounds); and (2) used a controlled substance in a manner that endangered the children and did not

---

[1] Associate Judge Charles Montemayor presided over Appellant Mother's termination hearing and signed the interlocutory order terminating Appellant Mother's parental rights. The Honorable Peter A. Sakai signed the final order in the underlying cause, which terminated the parental rights of the fathers. None of the fathers have appealed the termination of their parental rights.

[2] To protect the identity of the minor child, we refer to the appellant by a fictitious name and the children by their initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

[3] At the time of Appellant Mother's termination hearing, J.O.H. was fourteen years old, R.F.B. was eight years old, H.R. was seven years old, J.J.R. was five years old, and M.L.D. was three years old.

complete a drug treatment program without relapsing (subsection "P" grounds). *See* TEX. FAM. CODE § 161.001(b)(1)(O), (P). The trial court also found by clear and convincing evidence that termination of Appellant Mother's parental rights was in the children's best interest. *See id*. § 161.001(b)(2). On appeal, Appellant Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the best interest of her children. We affirm.

### STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence that parental rights should be terminated pursuant to one of the statutory predicate grounds and that termination is in the children's best interest. TEX. FAM. CODE § 161.001(b)(1), (2). In reviewing the legal sufficiency of the evidence to support these findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id*. at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. (quoting *In re J.F.C.*, 96 S.W.3d at 266). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *Id*. Because Appellant Mother does not challenge the predicate ground findings on appeal, we consider only whether sufficient evidence supports the best-interest finding.

**CHILD'S BEST INTEREST**

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, the factors set out in section 263.307 of the Family Code should be considered. *See* TEX. FAM. CODE § 263.307(b).[4] In addition to these statutory factors, in considering the best interest of the child, a factfinder may also consider the non-exhaustive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).[5] The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

---

[4] These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

[5] These factors include, but are not limited to, the following: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013) (citing *Holley*, 544 S.W.2d at 371-72).

In early January 2019, Appellant Mother was arrested for possession of marijuana and cocaine. According to the Department's investigator, at the time of her arrest, "the whereabouts [of] the children were unknown at the time of the arrest or where they were" living. Through family-based services, a safety plan was enacted, which required the children to be placed with their maternal grandmother. According to the Department's investigator, Appellant Mother and Father H.R.[6] violated the safety plan by "attempt[ing] to take one of the children from the grandmother's possession." Thus, on February 8, 2019, the Department filed a petition for conservatorship of the children and termination of Appellant Mother's parental rights.

During the bench trial, there was testimony from both the Department's investigator and caseworker that Appellant Mother had admitted to using cocaine. According to the investigator, she also admitted to using marijuana and to being in possession of both marijuana and cocaine at the time of her arrest. The caseworker further testified that Appellant Mother admitted to having used cocaine during the pendency of this case. According to the caseworker, on January 23, 2020, Appellant Mother admitted "using cocaine with a bunch of her friends, because she was feeling upset about how the case was going." During her testimony, Appellant Mother admitted she had relapsed but believed she had not "been getting the right help at [that] moment to avoid that mistake."

The caseworker testified that at the time of trial, the children had been in the care of the Department for almost a year. A service plan had been prepared for Appellant Mother, which ordered her (1) to complete individual counseling, a drug assessment, parenting classes, mental health evaluation, and domestic violence classes, (2) to maintain contact with the Department, and (3) to take random drug tests. According to the caseworker, Appellant Mother was "engaging in

---

[6] Father H.R. is H.R. and J.J.R.'s father.

partial compliance of her service plan, but did not complete all of her services." "She never returned back to individual counseling," and because of a positive drug test, she was referred a second time to drug treatment, which she did not complete. While Appellant Mother completed her initial substance abuse treatment course, the caseworker testified she continued to have concerns about Appellant Mother's drug use, which she believed posed an ongoing danger to the children. The caseworker testified, "When someone is on drugs, they are likely to, or there's a potential that [the person's drug use] could harm or [result in] neglect [of] the children."

Additionally, the caseworker testified that Appellant Mother had been discharged twice from domestic violence classes and thus never finished. According to the caseworker, Appellant Mother also never followed through with referrals for her mental health evaluation. Further, although the details were unclear, Appellant Mother made admissions to the caseworker about an arrest involving her assault of a fourteen-year-old girl. The caseworker testified she met with, or attempted to meet with, Appellant Mother monthly, reminding her of the services she needed to complete in order to be in compliance with her service plan. According to the caseworker, her referrals for Appellant Mother's services were up to date, and she was always available to answer Appellant Mother's questions.

The caseworker testified that when she attempted to verify Appellant Mother's residence, she discovered that Appellant Mother was living on property owned by the parents of Father H.R. The caseworker testified she was concerned about Appellant Mother living on a property owned by the parents of Father H.R. because of a history of domestic violence between Appellant Mother and Father H.R. According to the caseworker, Appellant Mother admitted to four instances of domestic violence perpetrated against her by Father H.R., the most recent of which was only a month before trial. The caseworker testified, "[T]here [were] many physical altercations between them that resulted in either the police being called or—and also, the children being [present]

witnessing it." The safety plan required Appellant Mother not to engage in a relationship with Father H.R. According to the caseworker, although Appellant Mother did not admit "to engaging in a relationship with him," she did make "admissions that she was involved with him in a physical way." Because of the Department's concerns for domestic violence involving Father H.R., the caseworker informed Appellant Mother that if the children were to be returned to her while she resided on the paternal grandparent's property, Father H.R. could not be in the home. The caseworker also asked Appellant Mother, with the help of her domestic violence counselor, to prepare a safety plan in the event that Father H.R. came over and a physical altercation occurred. To ensure that her residence on the paternal grandparent's property would be stable, Appellant Mother was also asked to provide a legal document showing she had a lease agreement. The caseworker testified that Appellant Mother provided neither the domestic violence safety plan nor the lease agreement.

The caseworker testified that the ages of the children made them particularly vulnerable. Due to Appellant Mother's lack of progress with her service plan, the caseworker had concerns about the safety of the children in the event they were returned to Appellant Mother. According to the caseworker, Appellant Mother had not shown she had a safe and appropriate home for the children. The caseworker also pointed to the ongoing violence between Appellant Mother and Father H.R. as a basis for why Appellant Mother has not addressed the reasons the children had come into the care of the Department.

At the time of trial, the children were still living with their maternal grandmother, with whom the children were bonded and with whom both their emotional and physical needs were being met. The caseworker testified the children were in therapy for exposure to domestic violence and were "working through their emotional issues." There was also some testimony that one of the children had "special needs," although there were no specifics contained in the record.

The caseworker testified that the maternal grandmother had demonstrated sufficient parenting ability and had shown her home to be a stable place for the children. The caseworker testified the children's emotional well-being would be served by continuing to live there. In contrast, the caseworker testified that Appellant Mother had not demonstrated adequate ability to parent the children, nor had Appellant Mother shown she could provide minimally adequate health and nutritional care. Further, as Appellant Mother had not demonstrated any ability to change the behavior that led to the removal of the children, the caseworker testified that she believed it would be a danger to return the children to Appellant Mother.

Finally, the caseworker testified that although Mother missed four or five visits with the children, she did visit them regularly and had a bond with the children. When asked at trial why it would be in the best interest of the children to be returned to her care, Appellant Mother testified, "[B]ecause I raised them, I birthed them, [and] I know each and every one of them individually."

In looking at all the evidence in the light most favorable to the trial court's best-interest finding, we hold there is legally sufficient evidence to support the finding. *See In re J.O.A.*, 283 S.W.3d at 344. The evidence in the record of Appellant Mother's drug use, both before and during the pendency of the case, her lack of stable housing, her failure to complete domestic violence classes, her previous domestic violence with Father H.R. and her refusal to change her behavior and disengage from him, and her failure to provide a safety plan for possible future instances of domestic violence all support the trial court's best-interest finding. Further, evidence that the children are doing well and have a stable home with the maternal grandmother, to whom they are bonded, support the trial court's best-interest finding.

With regard to factual sufficiency, although there was evidence that Appellant Mother had partially completed her service plan and was bonded with the children, in light of the entire record,

including the conflicting evidence detailed above, we hold the evidence is factually sufficient to support the trial court's best-interest finding. *See id*. at 345.

## CONCLUSION

We affirm the trial court's order terminating Appellant Mother's parental rights.

Liza A. Rodriguez, Justice